UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
AURA GUADALUPE,                                      :
                                                     :
                       Plaintiff,                    :
                                                     :
- against -                                          :    04 CV 7644 (HB)
                                                     :
JO ANNE B. BARNHART,                                 :    **OPINION & ORDER**
COMMISSIONER OF                                      :
SOCIAL SECURITY                                      :
                                                     :
                       Defendant.                    :
                                                     :
------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**[*]

On September 27, 2004, Plaintiff Aurea Guadalupe filed this action, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), to challenge the final determination by the Commissioner of Social Security ("Commissioner") that she was not "disabled" within the meaning of the Social Security Act between January 8, 2002 and April 29, 2004. Plaintiff claims that she was incapable of work during this period because of her back impairments. Before this Court are cross-motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). For the following reasons, the Commissioner's motion is GRANTED.

**I.     BACKGROUND**

**A. Procedural History**

On January 8, 2002, Plaintiff filed an application with the Social Security Administration ("SSA") for Supplemental Security Income disability benefits under Title XVI of the Social Security Act. 42 U.S.C. § 1381 et seq. Plaintiff's application was denied because the SSA determined that she was not disabled pursuant to 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.18. Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ reviewed Plaintiff's claim de novo, and on April 29, 2004,

---

[*] Marguerite E. Gardiner, a summer 2005 intern in my Chambers, and currently a second year law student at George Washington University Law School, provided substantial assistance in the research and drafting of this Opinion.

determined that Plaintiff was not disabled within the meaning of the regulations. On July 24, 2004, the Appeals Council refused Plaintiff's subsequent request for a review, at which time the ALJ's decision became the final decision of the Commissioner. Plaintiff then filed the instant action to challenge that decision. The Parties have both moved for judgment on the pleadings.

### B. Background[1]

#### 1. Educational, Employment, and Personal History

Plaintiff testified at the hearing before the ALJ that she was 49 years old. She was separated from her husband and lived in a dormitory-style homeless shelter. Plaintiff had a ninth grade education and limited English skills. In the early 1990s, she worked as a full-time security guard in Puerto Rico for two years, but she did not specify the type of facility. She was paid $225 a week, and her duties were to observe and write reports about the activities in the facility. She indicated that she walked every half hour, did not stand or sit "much," and wrote, typed, or handled small objects "most of the day." The job did not involve lifting or carrying. Plaintiff was incarcerated from 1996 to 1998, after she pled guilty to drug charges, and worked in food services during that period. Plaintiff testified that the last time she worked was about two years before her hearing, for one month, in telemarketing, but she could not sit for the length of time required because she suffered back pain. Plaintiff also testified that she was able to travel on public transportation by herself.

#### 2. Medical Evidence

##### a. Plaintiff's Complaints

Plaintiff stated that she had had a problem with her hip for years, and that it had worsened in the few years prior to her hearing. Plaintiff testified that she had such pain in her back and legs that she could neither sit nor stand for more than five or six minutes at a time. She explained that she took the pain medication Neurontin twice a day, and sometimes took Vioxx, Celebrex or Advil to alleviate the pain. She stated that at times the pain was so severe that she had to lie down at her daughter's home for several hours until it

---

[1] All facts are taken from the transcript of the administrative record ("Tr."), which was filed by the Commissioner as part of her answer.

subsided. While her physician recommended back surgery, Plaintiff testified that she was unable to have the operation because the shelter would not allow her to stay and recover there during the day. Although she testified that she felt pain upon lifting anything, she stated that she was able to lift a gallon of milk. She also testified that she could bathe herself, but she could not dress without assistance.

### b. Medical History

Medical records reveal Plaintiff suffered from asthma and chronic back pain during the relevant period. Between 2001 and 2003 she was treated for back pain associated with herniated lumbar discs with nerve compression and spinal stenosis.[2] On July 2, 2001, Plaintiff was seen at Lincoln Medical and Mental Health Center ("Lincoln") for low back pain and was prescribed medication. On August 8, 2001, Plaintiff returned to Lincoln, "unable to bend and do routine work," she complained of increased back pain that radiated down her leg. A magnetic resonance image ("MRI")[3] taken on October 13, 2001 revealed a bulge at the L4-5 discs that produced moderate central stenosis. Over the next year, Plaintiff continued to have tenderness of the spine, muscle spasms, and pain radiating into her legs, although there was no consistent evidence of muscle weakness, or sensory or reflex loss. Physicians recommended physical therapy and prescribed a cane. A second MRI, taken on May 10, 2002, showed that the L4-5 disc herniation had impinged on the L5 nerve roots, along with borderline spinal stenosis. In July 2002, an attending physician noted Plaintiff's antalgic gait,[4] and wrote that she had "disabling neuropathic pain" in her left leg, in addition to more chronic lower back pain. He suggested that Plaintiff's pain would be relieved by a discectomy,[5] and made a surgery referral. A final MRI taken on November 4, 2002 showed disc bulges at the L4-5 and L5-S1 discs that resulted in crowding of the existing right and left L4 roots. Surgery was discussed again in January 2003, when

---

[2] Spinal stenosis is the "narrowing of the vertebral canal, nerve root canals, or intervertebral foramina of the lumbar spine caused by an encroachment of bone upon the space." Dorland's Illustrated Medical Dictionary 1698 (Saunders 29th ed. 2000).
[3] Magnetic resonance imaging is "a complex electronic procedure for producing images of the internal structures of the body." 4 Att'ys' Dictionary of Med. and Word Finder (MB) M-15 (2004).
[4] An antalgic gait is a limp adopted so as to avoid pain on weight-bearing structures (as in hip injuries), characterized by a very short stance phase. Dorland's Illustrated Medical Dictionary 721 (Saunders 29th ed. 2000).
[5] A discectomy is the excision of an intervertebral disk. Id. at 526.

Plaintiff reported continuing pain. Medical records also indicate that Plaintiff's doctors prescribed a variety of pain relieving medications, and adjusted dosages to address side effects and the increasing intensity of her pain.

Records also show that Plaintiff arrived at a February 2002 medical appointment without her prescribed cane, that she missed multiple scheduled appointments, and was discharged from physical therapy after she missed three consecutive appointments. Plaintiff was also seen in the Lincoln Emergency Room for alcohol intoxication in June 2003.

## II.   DISCUSSION

### A. Applicable Legal Standard

The Social Security Act defines the term disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person is disabled

> only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

42 U.S.C. § 423(d)(2)(A). The Commissioner employs a five-step approach to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The burden of proof resides with the claimant during the first four steps, after which it shifts to the Commissioner for the fifth step. First, the Commissioner must determine whether the claimant is doing substantial gainful work. If not, in the second step, the Commissioner considers the severity of the claimant's medical impairment and whether the claimant meets the durational requirements of 20 C.F.R. § 404.1509. If the claimant is not engaged in substantial gainful activity and suffers from an impairment that is severe, the analysis proceeds to the third step in which the Commissioner determines whether the claimant's

4

impairment meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. Fourth, if the claimant does not have a listed impairment, the Commissioner evaluates the claimant's past relevant work. If the claimant cannot do past relevant work, in the fifth step the Commissioner examines her residual functional capacity, together with her age, education, and work experience, to determine if she can perform other work. If, at this last step, the Commissioner fails to demonstrate that there is other work that claimant can do, disability is established.

### B. The ALJ's Decision

In the present case, the ALJ performed the five-step evaluation and determined that Plaintiff was not disabled at any time during the relevant period. After consideration of the testimony of the Plaintiff and the medical evidence presented by both Plaintiff's treating physicians and a consulting physician, the ALJ concluded: (1) Plaintiff had not engaged in substantial gainful activity since the alleged onset of the disability; (2) her back pain, radiculopathy,[6] and asthma were considered severe pursuant to 20 C.F.R. § 416.920(b); (3) these impairments were not severe enough to meet or medically equal, either singly or in combination, any of the listed impairments in Appendix 1 of the regulations, and therefore did not establish disability; (4) Plaintiff's impairments did not prevent her from performing her past relevant work as a security guard. (Tr. at 27.) The ALJ also determined that Plaintiff's allegations that her pain was totally disabling were incredible. (Tr. at 26.) Because the ALJ found at step four that Plaintiff could return to her past work, he did not go on to step five to determine whether there was other work that Plaintiff could perform.

Plaintiff has moved for judgment on the pleadings on the grounds that it was error to determine that (1) Plaintiff's pain was not disabling and (2) Plaintiff could have returned to her past work as a security guard. Plaintiff also claims that the ALJ erred because he failed to consider the effects of Plaintiff's obesity in his decision. Defendant has filed a cross-

---

[6] Radiculopathy is "any disease or abnormality of a dorsal or ventral (sensory or motor) spinal nerve root from the point where it merges with the spinal cord (or brain stem) to the point where it joins its companion root (a motor or a sensory) to form a spinal nerve." 5 Att'ys' Dictionary of Med. and Word Finder (MB) R-10 (2004).

motion and argues that there was no error of law and the Commissioner's decision is supported by substantial evidence.

### C. The ALJ's Determination That Plaintiff's Pain Was Not Disabling

Plaintiff argues that the ALJ committed legal error because he failed to consider her subjective complaints of pain as well as certain objective medical evidence that Plaintiff suffered disabling pain. Plaintiff also asserts that the ALJ erred because he did not articulate his credibility findings with sufficient specificity.

In the evaluation of an individual's disability, an ALJ must consider evidence of pain, and the Second Circuit has recognized that subjective pain may serve as the basis for disability. 20 C.F.R. § 404.1529(b); Aronis v. Barnhart, No. 02 Civ. 7660, 2003 WL 22953167, at *7 (S.D.N.Y. Dec. 15, 2003) (citing Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)). "Once it is established that a claimant suffers from a medically determinable impairment which could reasonably be expected to produce the type of pain of which she complains, the [ALJ] may not ignore the subjective evidence . . . as to the severity of the pain caused by that impairment." Harrison, 901 F. Supp. at 757 (citing Diaz v. Bowen, 664 F. Supp. 725, 730 (S.D.N.Y. 1987)). The ALJ may evaluate the credibility of the claimant and "determine independently, in light of medical findings and other evidence, the true extent of the claimant's pain." Moya v. Chater, No. 94 Civ. 2234, 1996 WL 87244, at *7 (S.D.N.Y. Feb. 28, 1996) (citing Marcus, 615 F.2d at 27.) If the ALJ determines that the claimant lacks credibility, the ALJ must set forth his reasoning with sufficient specificity to enable this Court to decide whether the determination is supported by substantial evidence. Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984). If the ALJ's decision to ignore Plaintiff's subjective complaints of pain is supported by substantial evidence, then this Court must uphold that determination. Aponte v. Secretary, Dept. of Health and Human Servs., 728 F.2d 588, 591 (2d Cir. 1984).

Here, Plaintiff argues that the ALJ committed legal error when he failed to consider objective medical evidence of Plaintiff's pain. Specifically, Plaintiff alleges that the ALJ

6

"glossed over" certain medical tests[7] that indicated she suffered disabling pain. This argument is unavailing because the record shows that the ALJ did consider those tests, but juxtaposed them against other instances in which the same test indicated that Plaintiff did not suffer disabling pain. (Tr. at 21-23, 25.)

The ALJ's decision also took into account subjective evidence of Plaintiff's condition. He noted in his decision Plaintiff's complaints of pain, her inability to sit for long periods of time, and her difficulty getting dressed. (Tr. at 20-22.) These recitations indicate that the ALJ did not ignore subjective evidence of Plaintiff's pain.

Plaintiff also argues that if the ALJ found her subjective claims of disabling pain to be incredible based upon her failure to follow up with the recommended surgery, he was obliged to explain why Plaintiff's explanation was unacceptable. See Rivera v. Sullivan, 771 F. Supp. 1339, 1354 (S.D.N.Y. 1991) ("An ALJ's 'failure to acknowledge relevant evidence or explain its implicit rejection is plain error.'"). But here the ALJ did consider her explanation and recited it in his decision. (Tr. at 19.) The ALJ specifically described other inconsistencies in her testimony and based his assessment of her credibility on those inconsistencies. For example, Plaintiff testified that she was told her physical therapy was no longer necessary, but medical records indicate that it was discontinued after Plaintiff missed three consecutive appointments. (Tr. at 26.) Plaintiff testified that she did not go anywhere except to visit her daughter, to the store with her daughter, or to the doctor, but records show that Plaintiff was seen in the Emergency Room at Lincoln in June 2003, after she was found sleeping on a subway platform, intoxicated. Id. Also, Plaintiff had been prescribed a cane, but she did not bring it to her appointment with the SSA consultant physician. Id. These are specific enough to find that the ALJ's decision is supported by substantial evidence. See Aponte, 728 F.2d at 591-92.

---

[7] The tests conducted were straight leg raising tests. These tests are "performed with the patient lying supine, with the backs of the knees flat on the examining table. The knee is held straight, and the foot of one leg is raised while the hip is slowly flexed. Flexion of the leg through a range of sixty to ninety degrees is considered to be normal. The test is positive when pain is reproduced down the posterior thigh below the knee between the angle of thirty to seventy degrees." 5-15 Att'ys' Textbook of Med. (MB) P 15.34 (2004).

### D. The ALJ's Determination That Plaintiff Could Return to Her Prior Work as a Security Guard

The ALJ determined that Plaintiff was capable of light work,[8] and that she could return to her past work as a security guard "both as she performed it and as it is performed in the national economy." (Tr. at 27.) Plaintiff argues that the ALJ failed to develop the record sufficiently to ascertain whether her job as a security guard constituted past relevant work, and if so, what were the functional demands of that job. Plaintiff also argues that the ALJ's determination that she could perform the functional demands of the job of security guard was not supported by substantial evidence.

At step four of the evaluation process, the ALJ compares the claimant's residual functional capacity ("RFC") to her past relevant work. 20 CFR § 416.920(b). At this step, to establish disability, a claimant must demonstrate that her RFC was such that she was unable to perform her work either as she had actually performed it in the past or as that job function is usually performed. Jock v. Harris, 651 F.2d 133, 135 (2d Cir. 1981).

Past relevant work is work that the claimant has "done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [claimant] to learn to do it." 20 C.F.R. § 416.950, 416.965(a). Social Security Ruling 82-62 provides that Plaintiff "is the primary source for vocational documentation, and statements by [Plaintiff] regarding past work are generally sufficient for determining skill level, exertional and nonexertional demands of such work," although in some cases reference to corroborative sources such as the Dictionary of Occupational Titles is necessary. Social Security Ruling 82-62, 1982 WL 31386 (S.S.A.) (1982). The ALJ has a "heightened duty" to explore all relevant facts regarding past relevant work. Donato v. Sec'y of Dep't of Health and Human Servs., 721 F.2d 414, 419 (2d Cir. 1983).

RFC is a determination made by the ALJ. 20 C.F.R. § 416.94. He is required to consider medical data but draws his own conclusions as to whether that data indicates that Plaintiff is disabled. Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). The ALJ is also

---

[8] "Light work," as defined by SSA regulations, "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be little, a job is in the category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 416.967(b), 404.1567.

permitted to rely on the absence of medical data to determine whether Plaintiff is physically capable of performing her past relevant work. Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir. 1995).

Plaintiff argues it was error to identify security guard as her past relevant work because Plaintiff was uncertain about the exact dates she worked in that job. However, Plaintiff testified that she held that job for two years within the fifteen years prior to her hearing, and gave sufficient details about her employment, so it was reasonable to conclude that it qualified as past relevant work.

Plaintiff also argues that the ALJ failed to develop an adequate record of the functional demands of her past work because he relied solely upon Plaintiff's description of the demands of the job. This argument is unavailing because the ALJ also referenced the Dictionary of Occupational Titles, which defines the job of security guard as "light work," when he made his determination. (Tr. at 26-27; U.S. Dept. of Labor, Dictionary of Occupational Titles 372.667-034 (4th ed. 1991).)

Plaintiff further argues that substantial evidence does not support the ALJ's finding that Plaintiff was capable of performing "light work." Specifically, Plaintiff objects to the ALJ's reliance on a report provided by a non-medical SSA consultant. While the ALJ did rely on this report, it is not the only evidence he relied on. The ALJ also cited the SSA consulting physician's report, which indicated that Plaintiff was capable of "light physical exertion." (Tr. at 128.) He also noted Plaintiff's testimony that she could lift a gallon of milk. (Tr. at 459.) The ALJ's conclusion that Plaintiff was capable of light work is supported by substantial evidence.

### E. The ALJ's Failure to Consider the Effects of Obesity

Plaintiff argues that the ALJ erred because he failed to consider her weight throughout the disability determination, although she did not raise obesity as an impairment or limitation until this appeal. The ALJ noted her height of 5'4" and weight of 193 pounds in his decision, but did not spell-out whether this had any bearing on his determination. (Tr. at 21.) He also recited her testimony with regard to her fluctuating weight (as high as 225 pounds two years earlier). (Tr. at 19.)

Obesity is not in and of itself a disability. See Social Security Ruling ("SSR") 02-1p: "Titles II and XVI: Evaluation of Obesity," 2000 WL 33952015 (S.S.A.); 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A § 1.00B(2)(d). An ALJ should consider whether obesity, in combination with other impairments, prevents a claimant from working. Id. Those circuits which have recently commented on this complaint have held that an ALJ's failure to explicitly address a claimant's obesity does not warrant remand. See Rutherford v. Barnhart, 399 F.3d 546, 552-53 (3d Cir. 2005); Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004). When an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examining the Plaintiff, the claimant's obesity is understood to have been factored into their decisions. Skarbek, 390 F.3d at 504.

Here, the ALJ relied on medical evidence to determine that Plaintiff was capable of light work. That medical evidence which must have been apparent at the time of the assessment made no mention of Plaintiff's obesity and Plaintiff herself neglected to mention it when asked by the ALJ to describe why she was unable to work. (Tr. at 128, 459.) The ALJ's decision sufficiently, if somewhat indirectly, accounted for Plaintiff's obesity and determined that it did not impose a functional limitation on light work.

Plaintiffs relies on Willoughby v. Commr. of Social Security, 332 F. Supp. 2d 542 (W.D.N.Y. 2004), where the district court remanded and for an ALJ to consider plaintiff's obesity, but the facts of that case are inapposite. The plaintiff in Willoughby claimed morbid obesity as grounds for disability before the ALJ. Here, Plaintiff herself never mentioned her obesity and her lawyer claims her obesity as an impairment for the first time before this Court. Plaintiff has failed to establish grounds for remand.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion is DENIED and the Commissioner's motion is GRANTED. The Clerk of the Court is instructed to close any open motions and remove this case from my docket.

**SO ORDERED.**

August 24, 2005
New York, New York

_____
U.S.D.J.